## HARVEY PREBLE *vs.* SAMUEL REED, 2d. & *al.*

If an easement in land held in common, be granted by vote of the proprietors, and the grantee enter into possession of the easement, his title will be good against subsequent purchasers, without recording the grant in the registry of deeds.

Where referees, appointed by rule of the Court of Common Pleas, make a final report, without submitting any question of law to the consideration of the Court, and the Court, upon inquiry into the facts, accepts or declines to accept the report, the judgment of that Court is final.

But where the referees report a statement of facts, and expressly refer the law arising thereon, to the determination of the Court, the acceptance or rejection of the report is not an act of discretion, but a decision of the law which is subject to revision in this Court by exceptions.

When a question of law, arising upon a report of referees, is in this Court on exceptions from the Court of Common Pleas, this Court has power to recommit the report to the referees.

When a question of law comes before this Court by exceptions from the Court of Common Pleas, the facts stated in the bill, or referred to as making a part of the case, must alone be the ground of decision.

Where the owner of land flowed by a mill dam, *sells the mills and dam*, and retains the land, the right to flow the land, to the extent to which it was then flowed, without payment of damages passes by the grant; but where the owner *sells the land flowed*, and retains the mills and dam, without reserving the right to flow, he is not protected from the payment of damages.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

This was a complaint under the statute, wherein damages were claimed for flowing the land of the complainant by a dam erected and kept up by the defendants for the purpose of raising a head of water to carry their mills at the foot of *Neguasset* pond in *Woolwich*. The case was referred, by rule from the Court of Common Pleas, to three referees. The referees state in their award, that they met and heard the parties, and viewed the premises, and then state, that " we do finally award that the said *Samuel Reed*, 2d. and others are not guilty in manner and form as the complainant has alleged against them," and that the respondents recover their costs. " And by request of the parties the referees do hereunto annex a statement of the facts in the case as the same have been proved to them, and do submit the same for the consid-

eration of the Court." The report is then signed by the referees, and they also make a statement of facts, referring to the statement of facts in the case, *Myers Reed*, complainant, against the same respondents, before the same referees, as part of this, and concluding thus. "If upon these facts the defendants are liable for flowing the complainant's premises, the referees will estimate and report the damages." This statement is also signed by the referees. The material facts, disclosed in the report of the referees, are given in the opinion of the Court.

The report of the referees was returned to the Court of Common Pleas, and there the counsel for the complainant contended, that the general award and report of the referees ought not to be accepted ; and that on the special report, and the facts and matters set forth in the same, the Court ought to adjudge that the said defendants were liable for flowing the complainant's premises, in order that the referees might proceed to estimate and report the damages. The Judge was of opinion that the general award and report be accepted, notwithstanding the facts and matter set forth in the special report of said referees, and the grounds assumed by the complainant; and ordered that the report be accepted. Exceptions were filed by the counsel for the complainant.

*Preble* and *Randall*, for the complainant, contended, that exceptions in this case were properly made from the decision of the Court of Common Pleas. Because the statute of flowing takes away the right to appeal, and try the facts again, this does not prevent a party from filing his exceptions, and having the law revised. The Court of Common Pleas act, *stat.* 1822, *c.* 193, § 5, is sufficiently broad to include this. Nor do the referees undertake to decide both law and fact, and thus preclude a revision in either Court. They report the facts in reference to the right to recover, and expressly refer the law to the decision of the Court. When this is done, the decision is to be made in the same manner as any other question of law decided in the Court of Common Pleas. If either party believes the decision of that court to be erroneous, he may file exceptions and have the law revised in this Court. This is not an act of discretion in the Judge of the Common Pleas, but a determination of the law. If this were a mere question of expediency, whether to recommit the report, or refuse to do it, on

evidence brought forward by the parties, the case, *Walker* v. *San-born*, 8 *Greenl.* 288, might apply; but it does not here. This Court has power to do all that is necessary to carry into effect the principles of law and equity, and of course have power to recommit the report to the referees.

They also contended that, upon the facts reported by the referees, the complainant was by law entitled to damages; and cited *Hathorn* v. *Stinson*, 3 *Fairf.* 183; and same case, 1 *Fairf.* 224.

*F. Allen* and *Tallman*, for the respondents, contended, that exceptions would not lie in this case. The *stat.* of 1822, c. 193, § 5, does not extend to complaints for flowing. They are not *actions*. Nor can the Court grant a new trial as provided in that statute. By the statute of flowing the Court of Common Pleas has final jurisdiction, except where there has been a verdict. The acceptance of the report of referees, or the refusal to accept it, is an act of discretion merely in the Court of Common Pleas, and is not subject to revision here. Exceptions do not lie to the exercise of such an act. The referees have power to decide both law and fact, and they have done it. Their award is final for the defendants. Their statement of facts in the other paper, was made at the request of the parties to show the grounds of their opinion, not to submit any question of law. But if a question is submitted, it is only to the decision of the Court of Common Pleas. *Walker* v. *Sanborn*, 8 *Greenl.* 288; *Smith* v. *Thorndike*, *ib.* 119; 3 *B. & Ald.* 237; *Watson on Awards*, 167; *Kleine* v. *Catara*, 2 *Gallison*, 70.

They also contended, that the defendants had a clear right to flow the land, as related in the statement of facts, without the payment of damages. They cited *Bliss* v. *Rice*, 17 *Pick.* 23.

The opinion of the Court was drawn up by

SHEPLEY J. — The first question for consideration is, whether this Court will entertain this bill of exceptions, taken to an order of the Court of Common Pleas accepting the report of referees. The provision of the *stat.* 1821, c. 78, § 5, is, that "wherein it is agreed at the time of entering into the rule, that the report of said referees shall be final, the judgment of said Circuit Court of Common Pleas shall be final accordingly." And the statute providing for the filing of exceptions, c. 193, § 5, declares, "that either par-

ty aggrieved by any opinion, direction or judgment of said Court of Common Pleas, in any action originally commenced in said court, in any matter of law may allege exceptions to the same."    Where referees make a final report without submitting any question of law to the consideration of the Court, their decision will be conclusive subject to the action of the Court, to which it is properly presented upon it; and if that Court upon inquiry into the facts accepts, or declines to accept it, its judgment is final.   It is then in the exercise of a discretionary power entrusted to it, and it judges rather upon facts, than upon any question of law; and in such case, no exception can be alleged, as was decided in *Walker* v. *Sanborn*, 8 *Greenl.* 288.   It appears to have been the intention to allow the party to except to any opinion of a Judge of the Common Pleas on matter of law, in whatever form it might arise; and where it distinctly appears, that the decision was not made in the exercise of a discretion entrusted to him by law, but upon a question of law, it comes within the letter and spirit of the last named statute, and the former must be regarded as modified by it.   The clause giving this Court power to consider and determine in the same manner, as it would in actions originally commenced here, confers an authority sufficiently comprehensive to enable it to accept, recommit, or reject a report of referees; and the provision, that the Court may render judgment or grant a new trial, was not designed to limit or abridge such power, but rather to explain or enlarge it.   If the referees had in this case made a final decision upon the law as well as the facts, this Court would no more undertake to reverse that decision upon the law than upon the fact.   Instead of doing this, the Court must understand them as making a statement of the facts, and a formal decision in favor of one party; for they say, that they "submit the same for the consideration of the Court;" and further, that "if upon these facts the defendants are liable for flowing the complainant's premises, the referees will estimate and report the damages."   Such language is not indicative of an intention to make a final and conclusive decision upon the whole rights of the parties.

This case coming before this Court by exceptions, the facts stated in the bill, or referred to as making a part of the case, must alone be the ground of decision; and the Court cannot, even by

consent of parties, look into other cases of flowing by the same dam as reported; or into the records of the proprietors of *Neguasset*. This would be to decide the law upon a state of facts different from that, which is submitted by the referees, and on which the legal judgment submitted for revision was rendered. And the facts in relation to the mills, dam, and titles, are different, in some degree, as stated in the cases reported in 1 *Fairf.* 224; 3 *Fairf.* 183, and in this case.

The referees have stated the facts only, as they understand them to have been established by the testimony, but not the testimony introduced for this purpose; and it may be important to notice this, as explanatory of the language used in the report. And reference is made to their report, in the case of *Myers Reed* v. *Samuel Reed,* 2*d*, and others, and certain facts there stated are to make a part of this report.

It appears from their report, that the proprietors of *Neguasset,* granted one thousand acres of land to *Cadwallader Ford,* which were located in the year 1761. As it is stated, that *Ford* was their clerk and agent, and that there was a warrant for calling a meeting, and an article to be acted upon, and that lots were drawn, this Court must understand, that they acted as a proprietary. The land flowed is a part of the thousand acres thus granted to *Ford.* The report also states, that "prior to 1751, and while said premises alleged to be flowed and said mill sites, pond, privileges, and stream, were so owned by said proprietors, they permitted mills to be erected, where the defendants' mills now are, called *Pain's* mills, with a dam, which raised the water high enough to carry said mills." How was this permission given, by deed, by written contract, by vote of the proprietary, or by parol? As they acted as a proprietary, and their acts as such are referred to in the report, it is most probable, that the referees intended to be understood as stating it to have been by vote of the proprietary. However that may be, nothing appearing to the contrary, this Court must understand it to have been in some legal mode to give the right to build the dam and mill; while it cannot be regarded as conveying the land upon which they were built. A person permitted to do an act may do any thing without which that act cannot be done. The dam being rightfully built, the flowing of the water to a suffi-

cient height to carry the mill would be authorized, and as no complaint or interruption appears, the conclusion is, that it was authorized to such height as the dam then actually flowed.

The finding of the referees for the reasons before stated, is considered as equivalent to their finding the grant of an easement by a vote of the proprietors, and the grantees háving entered into possession, their title will be good against subsequent purchasers.

The referees find, that the mills and dam thus built, have been continued to the present time. The grantors of the defendants thus acquired a right to flow the lands of the proprietors by their own consent to such height as the dam then flowed; and the proprietors could not afterward convey their lands free from such right. The thousand acres were granted after the right to flow had been acquired, and neither their grantee, *Ford*, nor the complainant, claiming under him, can have a better right to complain than the proprietors had before the grant. And so far as *Pain's* mills flowed, the defendants upon this report, appear to have a right to flow without the payment of damages. How high that dam flowed the water is not stated, while it is stated, that *Farnham's* dam in 1766, "raised the water as high as does the defendants' dam;" and the conclusion must be, that *Pain's* dam did not flow as high as *Farnham's*.

*John Carleton*, who had purchased a fourth part of *Neguasset* from *Daniel Eames* and *Cadwallader Ford*, conveyed in 1745, to *Daniel Farnham* one sixth " and all his right to the stream to set up mills ;" and in 1746 *Farnham* and others, under that title, built mills where the defendants' now are, and these mills appear to have been rebuilt in 1766, and to have been thus continued to the present day. The conveyance by *Ford* as well as by *Carleton* was of an undivided part ; and the words used by the latter, conveying all his right to the stream to set up mills, would not increase the estate, or convey other than an undivided right in the lands and streams. The title by which the *Farnham* dam and mills were built appears to have been that of a tenant in common, who entered upon a portion of the common estate, and built a dam and mills upon it, and occupied, perhaps exclusively, such portion of the common estate. He could not rightfully change the character of the estate, or do an injury to other portions of it. He would acquire

no right as against his co-tenants to flow. And even if he had acquired a right to flow, being one of the proprietors, on the ground, that the mill had become the property of all the proprietors, and that he was but their agent; the situation of the parties would then be, that of the proprietors flowing their own lands, and afterwards while thus flowed, granting the thousand acres to *Ford* without reserving the right to continue to flow. And upon such a supposed state of facts, an instruction was given in the case of *Hathorn* v. *Stinson*, 1 *Fairf.* 224, which seems to have met the approbation of the whole court, that "if no such right is reserved he purchases it with the right to recover damages for such flowing." It is where the owner sells the dam and mills retaining the lands, that he conveys as an essential part of them the right to flow, not where he retains the mills and chooses to sell the land without reserving the right. *Farnham's* flowing not being legal, as against the owner of the thousand acres or his grantees, the defendants are no further protected than they can be by the flowing of *Paine's* dam, as it existed before the grant of the thousand acres; and to that extent they will be protected. The result is, that the report must be recommitted to the referees to assess the damages upon these principles; and if the Court has in any degree misapprehended their finding upon the facts, they will have an opportunity to state them more clearly, or to make a final report upon the whole matter of law and fact, without referring it to the Court.